[Cite as *State v. Ray*, 2012-Ohio-840.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                          :
                                       :        Appellate Case No. 24536
        Plaintiff-Appellee             :
                                       :        Trial Court Case No. 10-CRB-8886
v.                                     :
                                       :
ERICA RAY                              :        (Criminal Appeal from Dayton
                                       :         Municipal Court)
        Defendant-Appellant        :
                                       :
                        . . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of March, 2012.

. . . . . . . . . . .

JOHN DANISH, Atty. Reg. #0046639, and STEPHANIE L. COOK, Atty. Reg. #0067101, by
EBONY WREH, Atty. Reg. #0080629, City of Dayton Prosecutor's Office, 335 West Third
Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

MELISSA PFAHLER, Atty. Reg. #0086031, Law Office of the Public Defender, 117 South
Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}  Erica Ray appeals from her conviction and sentence on one count of child
endangering and one count of possessing drug-abuse instruments.

{¶ 2}  Ray advances two assignments of error on appeal. First, she challenges the trial

court's denial of her pre-trial suppression motion. She claims police lacked reasonable suspicion to believe she had been, or was about to be, engaged in criminal activity. Second, she challenges the legal sufficiency of the evidence to support her child-endangering conviction.

**{¶ 3}** The record reflects that two witnesses testified at Ray's suppression hearing, detectives Ryan Halburnt and Patrick Bell. Halburnt testified that he and Bell were in plain clothes in an unmarked cruiser on August 30, 2010. That evening, a known informant advised Bell by telephone that a drug delivery was about to be made at 219 Adams Street. According to the informant, the delivery vehicle was a black Chevy driven by Ray. The informant stated Ray was going to purchase heroin and that she would be returning to 219 Adams Street within minutes. The informant also told Bell that Ray likely would be accompanied by her boyfriend, David Price, and her daughter.

**{¶ 4}** Detectives Halburnt and Bell drove to 219 Adams Street, parked several houses away, and awaited the delivery. Within fifteen minutes, they saw a black Chevy pull up in front of 219 Adams Street. The two detectives exited their car wearing vests that identified them as police officers and walked toward the parked Chevy. Bell approached Price, the passenger, as Price was exiting the car. Appearing  nervous, Price reached his left hand into his shorts pocket. This caused Bell to conduct a weapons pat down. During the pat down, Bell felt what he immediately recognized as "gel caps" in a baggie in Price's left pocket. Based on his experience, Bell believed the capsules contained heroin. Before removing the baggie, Bell advised Price of his *Miranda* rights. In response, Price admitted that the baggie in his pocket contained heroin. Price proceeded to admit that he and Ray had gone to purchase drugs. Either Price or Ray stated that they purchased the drugs in Trotwood, an adjacent Dayton suburb.

Price   also admitted that he and Ray used drugs together.

{¶ 5}   For his part, Halburnt had approached the other side of the stopped car and watched Ray, the driver, while Bell initiated contact with Price. After a few moments, Ray began to step out of the car. Halburnt responded by approaching her and identifying himself. At that point, Bell announced that he had recovered heroin from Price. In response, Halburnt advised Ray of her *Miranda* rights and moved her to the sidewalk, where he handcuffed her. Bell confirmed that Ray's child was inside the car. He also obtained consent from Price and Ray to search inside the residence, which they shared. Once inside, Price and Ray directed the detectives to drug paraphernalia in the master bedroom. The paraphernalia consisted of syringes, hypodermic needles, and a "meth pipe."

{¶ 6}   After hearing the foregoing evidence, the trial court orally denied Ray's suppression motion. The trial court reasoned that the detectives lawfully had approached the stopped vehicle and questioned the occupants. The trial court determined that the confidential informant's tip gave the detectives reasonable, articulable suspicion of criminal activity. It further held that Price's act of reaching into his pocket during the encounter justified Bell's pat-down for weapons. The trial court also reasoned that, upon feeling the capsules, Bell was entitled to question Price about what was in his pocket and then to retrieve the baggie. With regard to the search of the house, the trial court found that it was performed with consent from Ray and Price. As a result, the trial court found no basis to suppress any evidence.

{¶ 7}   On appeal, Ray contends detectives Halburnt and Bell lacked reasonable, articulable suspicion that she had been engaged in, or was about to engage in, criminal activity. Ray asserts that the detectives acted on a mere "hunch," having done nothing to corroborate or

verify the information they had received from the informant. According to Ray, the detectives had no legitimate basis for approaching her vehicle at all. She also claims the discovery of heroin in Price's pocket did not give the detectives reasonable, articulable suspicion to subject her to a *Terry* stop.

**{¶ 8}** Upon review, we find no error in the trial court's denial of Ray's motion. A trial court's suppression decision presents a mixed question of fact and law. *State v. McNamara*, 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (4th Dist. 1997). We accept the trial court's view of the facts, provided its findings are supported by competent, credible evidence, because "[w]hen considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. But we determine independently whether the evidence satisfies the applicable legal standard. *State v. Mackey*, 2d Dist. Montgomery No. 22244, 2008-Ohio-3621, ¶9.

**{¶ 9}** The facts in the present case were established through the uncontroverted testimony of detectives Halburnt and Bell. The only issue is whether those facts reveal a Fourth Amendment violation. We conclude that they do not. The detectives did not need reasonable, articulable suspicion to approach the black Chevy, which Ray already had parked without being directed to do so. *State v. Lunce*, 12th Dist. Butler No. CA2000-10-209, 2001 WL 530541 (May 21, 2001) (recognizing that "an officer's approach and questioning of the occupants of a parked vehicle does not constitute a seizure and does not require reasonable, articulable suspicion of criminal activity").

**{¶ 10}** When Price exited the car and reached into his pocket, detective Bell was

justified in performing a pat-down for weapons. The information provided by the confidential informant gave the detectives a reasonable, articulable suspicion that Ray and Price were bringing drugs to 219 Adams Street. Bell testified that the informant was known to him and had worked with police for approximately three years. Bell added the informant previously had provided drug-related tips that had proven credible approximately ten times. According to Bell, the informant first mentioned Ray selling drugs from 219 Adams Street about a week before the incident in question. As set forth above, the informant then spoke to Bell on the evening of August 30, 2010, and advised that Ray had gone to purchase heroin and that she would be returning home soon. The informant stated that she would be driving a black Chevy and likely would be accompanied by her boyfriend and her daughter. Minutes later, the detectives saw Ray park a black Chevy in front of 219 Adams accompanied by Price and her daughter. Under these circumstances, the information provided by the known informant, who had proven credible in the past, gave Bell reasonable, articulable suspicion to support a weapons pat-down when Price appeared nervous and reached into his pocket after exiting the vehicle. Compare *State v. Lee*, 2d Dist. Montgomery No. 18517, 2001 WL1048550 (Sept. 14, 2001) (finding reasonable, articulable suspicion to justify a weapons pat-down where a reliable confidential informant advised police that the occupants of a vehicle may be transporting drugs). The pat-down revealed what Bell believed to be heroin capsules. Before retrieving the capsules, Bell read Price his *Miranda* rights. Price then admitted that the baggie in his pocket contained heroin.

{¶ 11}     When Bell announced that he had found heroin in Price's possession, Halburnt read Ray her *Miranda* rights and detained her. We agree with the State that the

discovery of drugs in Price's possession, combined with confidential informant's tip about Ray and Price bringing drugs to 219 Adams Street, gave the detectives reasonable, articulable suspicion to detain Ray. Compare *State v. Salyer*, 2d Dist. Miami No. 97-CA-39, 1998 WL184651, *6-7 (April 10, 1998) (reasoning that the discovery of drugs and paraphernalia in a passenger's possession, combined with a confidential informant's tip that the driver and passenger frequently transported marijuana together, gave police reasonable, articulable suspicion to detain the driver). Therefore, we see no Fourth Amendment violation in this case.[1] Her first assignment of error is overruled.

{¶ 12}    In her second assignment of error, Ray challenges the legal sufficiency of the evidence to support her child-endangering conviction.

{¶ 13}    The statute under which Ray was convicted, R.C. 2919.22(A), provides: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The phrase "substantial risk" in R.C. 2919.22(A) means a "strong possibility." R.C. 2901.01(A)(8). "An

---

[1] Parenthetically, we note that if Ray's detention had violated the Fourth Amendment, we would be required to separately determine whether her consent to a search of her home was nevertheless valid. The fact that Ray consented *after* being detained would not negate the validity of her consent, even if the detention was unlawful, provided that her consent was voluntary and not an exploitation of the prior illegality. *State v. LaPrairie*, 2d Dist. Greene No. 2010CA0009, 2011-Ohio-2184, ¶51-52. On the other hand, we note that "[a]n illegal detention presumptively nullifies any consent that is a product of the detention." *State v. Ferrante*, 2d. Dist. Montgomery No. 24344, 2011-Ohio-4870, ¶28 (citation omitted).    If Ray's detention outside her home had been unconstitutional, the State would bear the burden to prove that the taint of the illegality had dissipated and that her consent to search was a voluntary act of free will. *Id.* at ¶29. In its appellate brief, however, the State has not addressed the consent issue or attempted to argue that Ray's consent was not tainted by the alleged illegality of her detention. The State argues instead that no Fourth Amendment violation occurred.    In light of (1) the State's failure to address the consent issue and (2) our finding above that no Fourth Amendment violation occurred, we indicate only that    Ray's consent could be valid even if her detention had been found unconstitutional.

inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A)." *State v. Kamel*, 12 Ohio St.3d 306, 309, 466 N.E.2d 860 (1984).

{¶ 14}    On appeal, Ray asserts that the State presented legally insufficient evidence to prove that she engaged in child endangering by taking her five-year-old daughter   to buy drugs in Trotwood or by having drug-related paraphernalia present in her home. In support, Ray notes the absence of any testimony about the circumstances of the Trotwood drug buy, including whether she went to a drug house, whether weapons were involved, or whether the child remained in the car. Absent such testimony, Ray claims the State did not present legally sufficient evidence to prove child endangering based her act of taking her daughter on a trip to buy drugs. Ray also argues that the State failed to establish venue for a child-endangering conviction based on the drug buy. She stresses that the buy occurred in Trotwood, which is outside the city of Dayton, where the Dayton Municipal Court is located. Finally, with regard to child-endangering based on the presence of drug paraphernalia, Ray contends the record is devoid of evidence that her daughter had access to the items found in the master bedroom.

{¶ 15}    When a defendant challenges the sufficiency of the evidence, she is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594   (2d Dist. 2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶ 16}    With the foregoing standards in mind, we conclude that the State presented legally sufficient evidence to support Ray's child-endangering conviction. "Several courts have held that permitting illegal drugs to be present in the home or presence of children is a violation of R.C. 2919.22(A)." *State v. Byrd*, 2d Dist. Champaign No. 99-CA-17, 2000 WL 353135, *2 (April 7, 2000) (Citations omitted). Similarly, we believe a rational trier of fact could find that the act of taking a five-year-old child to purchase heroin from a drug dealer poses a substantial risk to the child's safety and constitutes a violation of R.C. 2919.22(A). The absence of detailed testimony about Ray's drug buy does not persuade us otherwise. According to detective Bell, Ray admitted taking her child with her to buy heroin. She also admitted knowing it was dangerous to do so. Even without detailed testimony about the drug transaction, we find legally sufficient evidence to support a child-endangering conviction based on Ray's act of transporting her child to a drug buy especially when the occupants of the vehicle return with the drugs in their possession.

{¶ 17}    With also find Ray's venue argument unpersuasive. Although she couches her argument in terms of venue, it actually raises a question of jurisdiction. "A municipal court's jurisdiction in criminal matters is statutorily defined as 'territorial,' and R.C. Chapter 1901 does not attempt to distinguish between jurisdiction of the subject matter, jurisdiction of the person, and venue." *State v. Brown*, 90 Ohio App.3d 674, 687, 630 N.E.2d 397 (1993). "Pursuant to R.C.1901.20(A)(1), a municipal court is authorized to adjudicate alleged

violations of any misdemeanor committed within the limits of its territory." *State v. Davis*, 2d Dist. Montgomery No. 19540, 2003-Ohio-4584, ¶17. In *Cheap Escape Co., Inc. v. Haddox*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, the Ohio Supreme Court interpreted the phrase "within the limits of its territory" in R.C. 1901.20(A)(1) to mean that a municipal court has "territorial subject matter jurisdiction" over criminal matters having a "territorial connection" to the court."[2] *Id.* at ¶16-18; *see*, *also*, *Krooss v. Murray*, 2d. Dist. Greene No. 2008-CA-100, 2009-Ohio-214, ¶13 (relying on the analysis in *Cheap Escape* to find that a defendant may be prosecuted in a municipal court if his conduct has a "territorial connection" to that court).

{¶ 18} In the present case, Ray's child-endangering offense has a territorial connection to the Dayton Municipal Court. The State's evidence established that Ray and her boyfriend traveled from their residence in Dayton with her five-year-old child on a localized trip, the only apparent purpose of which was to purchase heroin, to Trotwood, and then returned to Dayton with the drugs. Because Ray began and ended her local area drug-buying trip in Dayton and necessarily traveled though a significant part of the City, we conclude that her child-endangering offense based on that excursion has a territorial connection to the Dayton Municipal Court. Accordingly, we overrule Ray's second assignment of error.

{¶ 19} Based on the reasoning set forth above, the judgment of the Dayton Municipal Court is hereby affirmed.

. . . . . . . . . . . .

---

[2] The issue in *Cheap Escape* was the meaning of the phrase "within its territory" in R.C. 1901.18, which addresses a municipal court's jurisdiction in civil matters. In its analysis, however, the Ohio Supreme Court read R.C. 1901.18 and R.C. 1901.20(A)(1) in pari materia and found no reason why the phrase should have a different meaning in the civil and criminal contexts. *Cheap Escape* at ¶18.

GRADY, P.J., and FROELICH, J., concur.


Copies mailed to:

John Danish
Stephanie L. Cook
Ebony Wreh
Melissa A. Pfahler
Hon. John S. Pickrel