[Cite as *State v. Holtvogt*, 2012-Ohio-2233.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No.   24748 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-470 |
| v. | : | |
| | : | |
| ANTHONY J. HOLTVOGT | : | (Criminal Appeal from |
| | : |    Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of May, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

LAWRENCE J. GREGER, Atty. Reg. #0002592, 120 West Second Street, Suite 1100, Liberty Tower, Dayton, Ohio 45402
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}     Anthony Holtvogt appeals his convictions for illegal possession of a firearm in

a liquor-permit premises and tampering with evidence. He alleges that the trial court should not have overruled his motion to suppress statements he made to police. We find no merit in this allegation. Holtvogt also alleges that the state failed to present legally sufficient evidence to find him guilty of either offense. We find the state presented legally sufficient evidence regarding the illegal-possession of a firearm offense, but we do not find sufficient evidence regarding the tampering offense. We therefore affirm in part and reverse in part.

**The Facts**

{¶ 2} Late Saturday night, February 6, 2010, Holtvogt, his girlfriend, and his father were drinking beer in the Fricker's restaurant on Miller Lane in Dayton, holder of a D-5i liquor permit. Holtvogt was carrying a concealed handgun, a .32 caliber Beretta. At some point, for unclear reasons, the handgun discharged, and the bullet hit his girlfriend in the hip area. Luckily, the bullet was stopped by the Blackberry in her pocket. The three immediately exited the restaurant. Outside, Holtvogt's girlfriend took the Blackberry out of her pocket and removed the bullet from the device. The restaurant manager came out and told the group that he had called the police. Holtvogt did not want to talk to the police, so the three left before the police arrived. They went to Holtvogt's auto-repair shop, where his mother met them.

{¶ 3} Although Holtvogt did not leave any contact information, the police were soon able to discover his name and phone number. Captain Carl Bush of the Butler Township police called Holtvogt and asked him to come to the police station. Holtvogt agreed, arriving there around 1:30 a.m. Sunday with his girlfriend and his parents. Captain Bush met them and took Holtvogt to his office, which was in a secured area, behind an entry door that was locked from the outside, though not from the inside. Bush talked with Holtvogt for no more

than 30 minutes, leaving the door to his office open 6-8 inches the entire time. While Captain Bush did not formally give Holtvogt *Miranda* warnings, Bush did tell him that he was free to leave at any time, that he did not have to speak with Bush, and that Holtvogt, if he wanted, could talk to an attorney. During the interview, at Bush's urging, Holtvogt wrote a short statement about what happened at Fricker's. Afterward, Holvogt gave Bush the handgun and magazine, as well as the gun's holster. Holvogt's girlfriend gave Bush the damaged Blackberry. Holtvogt told Bush that he did not know where the bullet was. Holtvogt, his girlfriend, and his parents then left the police station.

{¶ 4}   They returned to Holtvogt's shop, where Holtvogt had left the jacket he was wearing in Fricker's. Captain Bush sent Officer John Ashworth (who was the officer who had responded to the Fricker's call) to the shop to photograph the jacket. While there, Ashworth asked Holtvogt where the bullet was. Holtvogt told him that he had laid it on the desk in the office area but now did not know where it was.

{¶ 5}   On July 10, 2010, Holtvogt was charged with one count of illegal possession of a firearm in a liquor-permit premises, under R.C. 2923.121, and tampering with evidence under R.C. 2921.12(A)(1).[1] The state's bill of particulars alleged that Holtvogt tampered with the bullet that hit his girlfriend's Blackberry. Holtvogt moved to suppress the statements he made to Captain Bush. After a hearing, the trial court overruled the motion. After a bench trial, at which Holtvogt's girlfriend, Officer Ashworth, and Captain Bush testified, the court found Holtvogt guilty on both counts and sentenced him to community control.

{¶ 6}   Holtvogt appealed. He now assigns three errors to the trial court. In the first,

---

[1] A firearm specification accompanied the possession count but was dismissed before trial.

Holtvogt alleges that the court should not have overruled his motion to suppress. In the second and third assignments of error, Holtvogt alleges that the evidence is insufficient to sustain the respective guilty verdicts.

### The Motion to Suppress

{¶ 7}    A defendant may move to suppress statements on the ground that they were obtained illegally. Crim.R. 12(C)(3). The appeal of a motion-to-suppress determination presents a mixed question of fact and law. The trial court is the trier of fact. By virtue of this role it is "in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). For this reason, an appellate court is "bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." (Citation omitted.) *Id*. But the appellate court "must independently determine as a matter of law * * * whether they [the facts] meet the applicable legal standard." *Id*. Holtvogt contends that Captain Bush obtained his statements illegally by failing to give him all the *Miranda* warnings. Holtvogt alternatively contends that he did not make the statements voluntarily. We disagree with both contentions.

### Miranda *warnings*

{¶ 8}    Custody is the trigger for *Miranda* warnings. Police must give a suspect these warnings before any "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is undisputed that Captain Bush questioned, or "interrogated," Holtvogt without first giving him the full complement of *Miranda* warnings. At issue is whether the questioning was "custodial," that is, whether Holtvogt was "in custody" at the time.

{¶ 9}    A suspect is in custody for *Miranda* purposes when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). Holtvogt was not formally arrested, therefore the question is, based upon the totality of the objective circumstances, whether his freedom was restrained to a  degree associated with a formal arrest. *Id*. The answer depends on "how a reasonable person in that position would perceive his or her freedom to leave." *Stansburg v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Here, the trial court's findings plainly show that Holtvogt's freedom to leave was never restrained to the degree necessary to find that he was "in custody."

{¶ 10}    Although conflicting evidence had been presented at the motion to suppress hearing, none of the trial court's findings are challenged on appeal. Key among those findings are these: Holtvogt voluntarily agreed to come to the police station; the interview took place in Captain Bush's office, which was in a secured area; although the secured area was behind a door that was locked from the outside, the door was not locked from the inside; Bush left the door to his office open 6-8 inches; Bush told Holtvogt that he was free to leave, that he did not have to speak to Bush, and that he could talk to an attorney; the interview lasted 20-30 minutes; after the interview, Holtvogt was allowed to leave. We have held that being a suspect and being questioned in a police station with no neutral parties present is not enough to trigger *Miranda*. *State v. Sosnoskie*, 2d Dist. Montgomery No. 22713, 2009-Ohio-2327, ¶ 56. This is particularly true when, among other things, the defendant voluntarily appeared at the station, the defendant's freedom of movement was in no way restrained (e.g., he was not handcuffed), and the defendant was told that he was free to leave at any time. *State v. Reeves*,   Greene No.

2002-CA-4810, 2002-Ohio-4810, ¶ 11.

**{¶ 11}** Holtvogt was not "in custody" during the interview. Therefore Captain Bush was not required to give him *Miranda* warnings.

*Voluntariness*

**{¶ 12}** Under the Due Process Clause, "even when *Miranda* warnings are not required, a confession may be involuntary if on the totality of the circumstances the "'defendant's will was overborne" by the circumstances surrounding the giving of a confession.'" *State v. Petitjean*, 140 Ohio App.3d 517, 526, 748 N.E.2d 133 (2d Dist.2000), quoting *Dickerson v. U.S.*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Holtvogt alternatively contends that his statements were involuntary because his will was overborne by Captain Bush's false promises. We disagree.

**{¶ 13}** "Promises of leniency by the police * * * are improper and render an ensuing confession involuntary." *State v. Hopfer*, 112 Ohio App.3d 521, 547, 679 N.E.2d 321 (2d Dist.1996). We first note that some of the statements attributed to Captain Bush by the defendant and his parents were denied by Bush (*See e.g.* Motion to Suppress Tr. 14,19). Nevertheless, Holtvogt characterizes statements made, or alleged to have been made, by Bush at the police station as promises. For example, Bush said that the purpose of his asking Holtvogt to come to the station was to get a statement and to make sure everyone was okay; prompted by a question from Holtvogt's father, Holtvogt asserts Bush said no criminal charges were going to be filed; and according to Holtvogt, his mother and father asked Bush if he needed a lawyer and Bush told them that one was not necessary. We are unable to conclude that any of the statements claimed to have been made were enough to overcome

Holtvogt's will. Moreover, the trial court found as a matter of fact that Holtvogt was told that he was free to leave and could talk to an attorney if he wished. The record does not demonstrate that Holtvogt's will was overborne by Bush's actions.

{¶ 14} Holtvogt's statements were not obtained illegally. Therefore the trial court properly overruled the motion to suppress them.

{¶ 15} The first assignment of error is overruled.

### The Sufficiency of the Evidence

{¶ 16} Holtvogt alleges that the evidence is not sufficient to find him guilty of either illegal possession of a firearm in a liquor-permit premises or tampering with evidence. As a matter of law, evidence is sufficient to support a guilty verdict if "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We determine that the evidence is sufficient to find Holtvogt guilty of illegal possession in a liquor-permit premises, but it is not sufficient to find him guilty of tampering with evidence.

*Illegal possession*

{¶ 17} Former R.C. 2923.121(A) pertinently prohibits a person from "possess[ing] a firearm in any room in which any person is consuming liquor in a premises for which a D permit has been issued under Chapter 4303. of the Revised Code."[2] Holtvogt contends that the

---

[2] The statute was amended on September 30, 2011. The phrase "beer or intoxicating liquor" replaced the word "liquor." Also, a person with a concealed-carry license may now possess a firearm in a premises that holds a D liquor permit provided the person does not consume beer or intoxicating liquor and is not under the influence of alcohol or drugs. The evidence shows that Holtvogt had a concealed-carry license, though it also shows that he, himself, was only drinking beer. Regardless, Holtvogt was found guilty of violating the former version of the statute.

state presented no evidence that while he was in Fricker's with the handgun someone there consumed liquor. We conclude the trial court reasonably found that circumstantial evidence satisfied the element. *See, generally, Jenks* at 272.

{¶ 18} On the Saturday night that Holtvogt was in Fricker's, a lot of other people were there too. (Trial Tr. 9) The restaurant and bar are all in the same area. (Trial Tr. 37) Fricker's had a D-5i liquor permit, which allowed it to sell beer and liquor until 2:30 a.m. on Sunday. *See* R.C. 4303.181(I) and Ohio Adm.Code 4301:1-1-49(C)(2). To obtain a D-5i permit, an establishment must (among other requirements) offer full-course meals, appetizers, and sandwiches; have inside seating for at least 140 people; and have at least 4,000 square feet of floor area. R.C. 4303.181(I)(2), (3) and (4). Thus, there was circumstantial evidence that Fricker's is a large establishment that provides liquor, beer and food. There was testimony that the defendant was at Fricker's long enough to consume two or three beers. The size and nature of the establishment, the length of time the defendant was there, and the licensure and number of people present on a Saturday night are circumstantial evidence from which one could infer that someone in the room was consuming liquor. Finally, we note that Fricker's had signs posted at its entrance that warned against bringing a gun inside. We conclude that the combination of circumstantial evidence was sufficient to establish the liquor-consumption element of the firearm possession statute.

{¶ 19} The Ninth District has concluded similarly. In *State v. Lee*, 9th Dist. Lorain No. 07CA00184, 2008-Ohio-343, there was no evidence that others in the bar "were being served at precisely the same moment as" the defendant was seen with a gun. But there was testimony that the bar was licensed to sell liquor during normal business hours and that the

incident occurred during those hours. The court said that this evidence implied that another person could have been served while the defendant was there. *Id*. at ¶ 21. Consequently, "the jury was free to decide that liquor was being dispensed so as to satisfy the statutory requirements." *Id*.

{¶ 20} The second assignment of error is overruled.

*Tampering with evidence*

{¶ 21} R.C. 2921.12(A)(1) pertinently prohibits a person who knows that an investigation is underway or is likely to begin from "conceal[ing], or remov[ing] any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." "A person acts purposely when it is his specific intention to cause a certain result." R.C. 2901.22(A). In the verdict entry, the trial court found that Holtvogt, with the requisite purpose, concealed or removed "a handgun and/or projectile expelled from the handgun."[3] Holtvogt argues that he tampered with neither item.

{¶ 22} Holtvogt contends that the trial court erroneously found that he tampered with the handgun. We agree with the state that the court's reference to the handgun is likely a clerical mistake. The bill of particulars–filed in response to Holtvogt's request that the state identify what it was that he allegedly tampered with–limits the tampering allegation to only the bullet. Moreover, trial testimony shows that, while Holtvogt was at the police station, he turned over the handgun to Captain Bush.

{¶ 23} Regarding the bullet, Holtvogt contends that no evidence was presented

---

[3] VERDICTS COUNT 1 - ILLEGAL POSSESSION OF A FIREARM IN A LIQUOR PERMIT PREMISES AND COUNT 2 - TAMPERING WITH EVIDENCE (June 14, 2011).

showing that he did something with the bullet with the purpose of making it unavailable as evidence. We agree.

{¶ 24} The evidence about this bullet,[4] perhaps the diameter of a pen, does not establish what Holtvogt did with the bullet let alone establish that, if he did anything with it, he did it with the requisite improper purpose. The pertinent evidence is this: Holtvogt's girlfriend testified that she had the bullet outside Fricker's; she also testified that she gave the Blackberry to Captain Bush. Bush testified that when he asked Holtvogt about the bullet Holtvogt told him that "he didn't know where it was." (Trial Tr. 34). Bush testified that he never asked Holtvogt's father or mother whether either of them had seen the bullet. Nor did he ask Holtvogt's girlfriend about it. Officer Ashworth testified that, while he was at Holtvogt's auto-repair shop, photographing Holtvogt's jacket, he asked Holtvogt where the bullet was and Holtvogt told him "that he laid it in the office area on the desk, but now he quoted [sic] that he didn't know where it was at." (Trial Tr. 23). The state points out that this shows that Holtvogt was the last person to have the bullet. The state also cites Holtvogt's behavior at Fricker's–leaving before the police arrived, despite knowing that they had been called, without giving anyone his contact information–which the state characterizes as deceptive. We do not think that anything pertinently probative may be inferred from the fact that Holtvogt had the bullet last or from his decision to leave Fricker's.

{¶ 25} When viewing the evidence in the light most favorable to the state, we determine the evidence is insufficient to find that Holtvogt concealed or removed the bullet

---

[4] Captain Bush explained that an unfired cylindrical object commonly called a bullet is technically a cartridge. The cartridge's rounded tip is actually the bullet, the projectile that is propelled out of the gun's barrel. Regarding the bullet's size, Bush said that it is "[the] diameter of a pen, and if it mushroomed once it struck the cell phone a little bit smaller than a dime in diameter." (Trial Tr. 42).

with the requisite improper purpose. There is no evidence from which it may reasonably be inferred that whatever Holtvogt did with the bullet he did with the specific purpose of making it unavailable as evidence. Holtvogt admitted to police that it was his gun that discharged in Fricker's, and he even turned the gun over. The damaged Blackberry was available. The bullet was not important–which is likely why the police do not appear to have paid it much attention either. As Captain Bush testified, they never searched for it in either Holtvogt's vehicle or at his place of business.

{¶ 26}   The third assignment of error is sustained.

## Disposition

{¶ 27}   The trial court's judgment is affirmed in part and reversed in part. It is reversed with respect to the conviction for tampering with evidence, and the sentence imposed for this offense is vacated. In all other respects the judgment is affirmed. This case is remanded for the limited purpose of amending the termination entry to conform with our disposition.

. . . . . . . . . . . . .

FAIN and FROELICH, JJ., concur.


Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Lawrence J. Greger
Hon. Frances E. McGee