[Cite as *State v. Humphrey*, 2013-Ohio-40.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                             :

      Plaintiff-Appellee                :               C.A. CASE NO.     25063

v.                                        :               T.C. NO.     11CR420

PAUL M. HUMPHREY                          :               (Criminal appeal from
                                                          Common Pleas Court)

      Defendant-Appellant               :

                                          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____11th_____ day of _____January_____, 2013.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JAMES S. ARMSTRONG, Atty. Reg. No. 0020638, 131 N. Ludlow Street, Suite 386 Talbott Tower, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

      **{¶ 1}** Paul M. Humphrey appeals from a judgment of the Montgomery

County Court of Common Pleas, which, having granted in part and overruled in part his motion to suppress evidence, found him guilty on his no contest plea to one count of aggravated robbery. Humphrey was sentenced to three years of imprisonment and was ordered to pay restitution in the amount of $240. Humphrey appeals from his conviction.

{¶ 2}  For the following reasons, the judgment of the trial court will be reversed, the conviction will be vacated, and the case will be remanded to the trial court for further proceedings.

{¶ 3}  The State offered the following evidence at the suppression hearing.

{¶ 4}  In January 2011, Dayton police officers were investigating the armed robberies of two Cassano's Pizza restaurants and were aware of the robbery of a third Cassano's outside of the city. Various witnesses described the perpetrator of these crimes as a white male with no facial hair, 5'7" to 6'1" in height, wearing a sweatshirt and/or a jacket. One person described a specific brand of boots that the perpetrator had been wearing; two witnesses stated that he had a "funny walk" or a limp. Based on similarities in the descriptions of the perpetrator, the police suspected that the same man had committed both of the Dayton offenses.

{¶ 5}  Through Crime Stoppers, Detective Jamie Bullens received a tip from an anonymous informant[1] naming Humphrey as a possible suspect in the Cassano's robberies. According to the informant, Humphrey had recently stated that he was going to start committing robberies because he had no money. The informant further stated that

---

[1] The record does not contain any information about the manner, if any, in which Crime Stoppers tracks the sources of its tips, nor does it include an indication that the police knew the identity of the informant or that the informant had provided information previously.

Humphrey was "extremely violent and dangerous," and that he had been involved in a shooting with police officers many years earlier while robbing a Church's Fried Chicken restaurant. The informant described Humphrey as walking with a limp as a result of the earlier shooting with police; the informant also described Humphrey's car and provided detailed information about where Humphrey kept a weapon in his home. Bullens contacted Humphrey's probation officer and confirmed some of the informant's information, including that Humphrey walked with a limp as a result of a shooting with police officers many years earlier.

{¶ 6} In the morning of February 3, 2011, Bullens obtained a search warrant for Humphrey's home at 1627 Coventry in Dayton. Bullens did not request permission to execute the warrant at night. Because of the use of a weapon in the offenses at issue, Humphrey's prior offense of violence, and the informant's statement that Humphrey kept a gun in his house, police officers developed a plan to try to execute the warrant after Humphrey had been stopped in his car outside the home; in this way, they could avoid SWAT team involvement in the execution of the warrant. To this end, Bullens informed numerous officers who came on duty in the afternoon of February 3 of Humphrey's description, the location of his home, the description and license plate number of his car, and the plan to stop him when he left his house. Officer Matthew Beavers, in particular, was asked to watch Humphrey's house and attempt to stop him when he left the home.

{¶ 7} Throughout the afternoon and early evening, officers did not see any activity that presented an opportunity to stop Humphrey away from the house. During this time, Beavers spent some time simply watching the house, but he also responded to

occasional calls for other police activity, after which he would return to watch for Humphrey's departure.

{¶ 8} At approximately 8:00 p.m., Beavers saw Humphrey leave his home in his car. Beavers stopped Humphrey a short distance away with help from another officer. According to Beavers, the officers ordered Humphrey out of his car at gunpoint, read him his *Miranda* rights, told him they were investigating some robberies, and handcuffed him. Humphrey was cooperative, and the officers removed his handcuffs while they waited for Detective Bullens to respond to the location of the stop. When Bullens arrived, he informed Humphrey that the police had obtained a search warrant for Humphrey's residence. However, because Bullens had not requested permission to execute the warrant at night, he informed Humphrey that Humphrey would be detained until Bullens could obtain a nighttime warrant, unless he consented to a search of his home. Humphrey signed a consent to search. Officer Beavers testified that he had not observed any traffic violation when he stopped Humphrey, that Humphrey was not issued a citation, and that the officers did not have a warrant for Humphrey's arrest.

{¶ 9} Humphrey was transported back to the house, and the officers proceeded to search the home. The officers found boots and a firearm matching the descriptions of the ones worn and used by the perpetrator of the robberies; they also found a blue Fifth Third Bank money satchel like one that had been taken from one of the Cassano's restaurants. Based on the discovery of these items, Humphrey was arrested.

{¶ 10} Humphrey testified that the officers had screamed at him and that he had thought "they were getting ready to shoot" him when he was stopped in his car. He initially

denied giving consent to search his home or seeing the consent form that the officers produced at the suppression hearing, claiming that he would not have consented because he had a weapon in the house. On cross examination, he conceded that it was possible he had signed the form.

{¶ 11}    Humphrey was indicted for two counts of aggravated robbery, each with a firearm specification, and for having a weapon while under disability. He filed a motion to suppress the evidence against him, in which he argued that, because he was seized without an arrest warrant, probable cause, or a reasonable suspicion that he had engaged in illegal activity, his consent to the search of his house was invalid. As such, he argued that all of the evidence found at his house, as well as a photograph of him that was used in a photo array, should have been suppressed. The trial court conducted a hearing on this motion. During the hearing, the parties and the court repeatedly stated that the search warrant was "not an issue" that was to be addressed at the hearing.

{¶ 12}    After the suppression hearing, the trial court granted in part and overruled in part Humphrey's motion to suppress evidence. The trial court found that Humphrey's detention was unconstitutional because 1) there was no evidence that Humphrey was engaging in illegal activity, 2) there was no probable cause, and 3) the encounter was not consensual. The court further found that Humphrey's consent to the search of his home was invalid because it was not given of his free will, but pursuant to a show of authority by the police. The court suppressed any statements made by Humphrey during the stop.

{¶ 13}    With respect to the search of Humphrey's home, however, the court found that, notwithstanding the invalid consent, the search warrant had been issued upon probable

cause and was valid. The court further concluded that, although the warrant was issued for a daytime search and was executed at night, this distinction violated Crim.R. 41(C) but did not violate Humphrey's constitutional rights, and thus did not require exclusion of the evidence. Thus, the trial court overruled Humphrey's motion to suppress with regard to the items found at his home.

{¶ 14} Pursuant to a plea agreement, Humphrey pled no contest to one count of aggravated robbery; the other count of aggravated robbery, the firearm specifications, and the count of having a weapon while under disability were dismissed. He was found guilty, sentenced to three years of imprisonment, and ordered to pay restitution in the amount of $240.

{¶ 15} Humphrey appeals from his conviction, raising two assignments of error. Because these assignments are related, we will address them together.

THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS.

APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 16} Humphrey contends that the trial court erred in overruling his motion to suppress the evidence found at his house. He also contends that he was denied the effective assistance of counsel insofar as his trial counsel challenged the search of his home only with respect to the validity of his consent to the search and did not challenge whether there was an adequate basis for the issuance of a search warrant.

{¶ 17} Although it is not specifically the subject of this appeal, we must discuss

the court's finding concerning consent before addressing the assignment regarding the warrant; if the court erred in finding the consent invalid, the question of the warrant is moot.[2]

**{¶ 18}** A trial court's decision on a motion to suppress evidence presents a mixed question of fact and law. *State v. Holtvogt*, 2d Dist. Montgomery No. 24748, 2012-Ohio-2233, ¶ 7; *State v. Ray,* 2d Dist. Montgomery No. 24536, 2012-Ohio-840, ¶ 8. "'We accept the trial court's view of the facts, provided its findings are supported by competent, credible evidence, because "[w]hen considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."' [*Ray*], quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. However, 'we determine independently whether the evidence satisfies the applicable legal standard.' *Id.,* citing *State v. Mackey,* 2d Dist. Montgomery No. 22244, 2008-Ohio-3621, ¶ 9." *State v. Russell*, 2d Dist. Clark No. 2011-CA-10, 2012-Ohio-4316, ¶ 19.

**{¶ 19}** The trial court concluded that the officers did not have probable cause to detain Humphrey when they stopped him (a conclusion shared by Detective Bullens according to his testimony at the hearing). The court also concluded that Humphrey's consent to the search of his house was "tainted and constitutionally invalid" because he "did not voluntarily consent * * * as his own free will," but did so only pursuant to the police officers's show of authority, and thus that Humphrey's "consent" did not justify the search.

---

[2]Since the State is not challenging the judgment which denied the motion to suppress, but is instead defending the judgment on grounds other than that relied upon in the trial court, it was not required to file a cross-appeal.    App.R. 3(C).

We also agree with the trial court's conclusion that Humphrey's consent to search was not sufficiently attenuated from the unlawful detention  so as to be independent from it, and therefore valid despite the illegality.  *See State v. Gardner*, 2d Dist. Montgomery No. 24308, 2011-Ohio-5692, ¶ 38.   The trial court did not err in concluding that the consent was invalid under the circumstances presented in this case.

{¶ 20}   As discussed above, the trial court further concluded that the absence of valid consent did not require the suppression of the evidence found at Humphrey's house, because the police had a valid search warrant for the house.   On appeal, Humphrey contests the trial court's finding that the search warrant was valid, although the issue was not contested at the hearing.   Specifically, he claims that 1) the information from the confidential informant did not "produce reasonable suspicion to justify an investigatory detention, let alone probable cause for a warrant" and was not "predictive information," and 2) that the confirmation of this information by the police did not "test the informant's knowledge or credibility" with respect to the alleged offenses.   Humphrey claims that trial counsel was ineffective in failing to raise this issue in the motion to suppress.

{¶ 21}   The Crime Stopper informant indicated that Humphrey had stated, in the weeks preceding the Cassano's robberies, that he was "going to start robbing places" because he could not make any money.   The informant also stated that Humphrey had committed armed robbery in the past and had been involved in a shooting with the police. The informant provided a physical description of Humphrey, including his age, race, build, shaved head, and the fact that he walks with a limp as a result of the prior police shooting, a description of his car and his gun, the location of his house, and the alleged location of the

gun kept inside the house.

{¶ 22} Humphrey claims that the information provided by the anonymous informant did not tie him to the crimes in any way that could be independently verified by the police, and thus that it provided an insufficient basis for the issuance of a search warrant. Humphrey's alleged expression of an intent to return to robbery was not verifiable, and the informant's tip did not include any verifiable basis for his suspicion that Humphrey had been involved in the Cassano's robberies. However, the caller's description of Humphrey, particularly the fact that he walked with a limp, matched an unusual physical characteristic identified by two of the victims; one person reported that the perpetrator had a "funny walk," and another said that his "right leg dragged as if it didn't want to follow." The police officers verified this particular characteristic described by the informant with Humphrey's parole officer, who knew Humphrey walked with a limp but did not know why. The parole officer retrieved Humphrey's intake medical record from Lucasville prison, which stated that he suffered from "drop foot syndrome" as a result of being shot and having nerve damage in his right leg. The police also confirmed that Humphrey's injury resulted from a shooting involving the police. The perpetrator's other physical characteristics, as described by the victims, while not particularly distinctive, did not appear to exclude Humphrey as a suspect. Probable cause has been defined as "a reasonable ground for belief of guilty." *State v. Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000), citing *Carroll v. United States*, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

{¶ 23} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a

practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, following and quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 24} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.* at paragraph two of the syllabus, following *Gates*.

{¶ 25} Hearsay information from an informant may be considered in determining probable cause so long as the affiant presents the issuing judge or magistrate with the affiant's basis of knowledge and some underlying circumstances supporting the affiant's belief that the informant is credible. *State v. Goins*, 5th Dist. Morgan No. 05-8, 2006-Ohio-74, citing *George* at 329 and *Gates*, 462 U.S. at 238-239. "Absent this

showing, the determination of probable cause is in effect made by the affiant or informant rather than a neutral and detached magistrate as required by the United States and Ohio Constitutions." *Id*., citing *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

{¶ 26} In this case, Bullens's affidavit in support of the search warrant did not verify any of the assertions made by the informant other than general identifying information, such as Humphrey's address (without any description of the house), the make of his car, and the fact that Humphrey walked with a limp. The informant correctly recounted some of Humphrey's distant criminal history, but this information, although arguably relevant, could not form the primary basis for the conclusion that evidence of the new offenses was likely to be found in Humphrey's home. The fact that Humphrey walked with a limp, as did the perpetrator of at least one of the robberies, seems to have been the most compelling, verifiable evidence to have associated Humphrey with the armed robberies. But none of the informant's other information was verified.

{¶ 27} The search warrant in this case was granted based on the unsubstantiated statement of an anonymous informant that Humphrey expressed an intention to commit robberies, and the fact that both the perpetrator and Humphrey walked with a limp. In other words, the trial court concluded that the informant's verified statements related to Humphrey's address and physical description, including his limp, as set forth in Detective Bullens's affidavit, sufficiently corroborated the anonymous tip so as to justify the issuance of the warrant. We cannot agree. Although we know, in hindsight, that Humphrey was involved, the evidence available when the search warrant was issued was not sufficiently

reliable to establish a "fair probability" that evidence of the crimes, including a gun which was allegedly seen by the informant less than a month before the search,  would be found at Humphrey's house. Thus, on the record before us, the search warrant should not have been issued.  Moreover, in failing to challenge the issuance of the search warrant, trial counsel's representation fell below an objective standard of reasonableness and created a reasonable probability that, but for the error, the result of the hearing would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 28}     Finally, Humphrey argues that the search warrant could not have formed the basis of a valid nighttime search because it did not specify that the warrant could be executed at night.  Generally, however, "the exclusionary rule is not automatically invoked merely because the evidence to be admitted is obtained by officers during a nighttime search under a warrant which does not contain an 'appropriate provision' authorizing the warrant to be executed at night," and evidence obtained in technical violation of Crim.R 41(C) need not be suppressed where there is no showing of bad faith conduct on the part of the officers executing the warrant, or where the search did not result in prejudice to the defendant.  *State v. Coburn*, 4th Dist. Scioto No. 1744, 1990 WL 85151, *4 (May 31, 1990)  (citations omitted).  "Only a 'fundamental' violation of Rule 41 requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards."  *Coburn*, quoting *United States v. Vassar*, 648 F.2d 507 (9th Cir.1980), certiorari denied 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981).

{¶ 29}   The evening search in this case, in itself, did not violate Humphrey's fundamental right to be free from an unreasonable search, and therefore did not require suppression of the evidence.   When considered in the context of the officers' unrefuted explanation that they waited, for reasons of safety, to execute the search warrant until Humphrey left the house and that he did not leave the house until after dark, the officers' failure to obtain last-minute permission for a nighttime search was reasonable.

{¶ 30}   The assignments of error are sustained.

{¶ 31}   The judgment of the trial court will be reversed, Humphrey's conviction will be vacated, and the case will be remanded to the trial court for further proceedings.

. . . . . . . . . .

FAIN, P.J. and DONOVAN, J., concur.

Copies mailed to:

R. Lynn Nothstine
James S. Armstrong
Hon. Mary L. Wiseman