[Cite as *State v. Varney*, 2013-Ohio-1232.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                          :

    Plaintiff-Appellee                      :            C.A. CASE NO.    25186

v.                                                                  :            T.C. NO.    12CR135

LORI A. VARNEY                                      :            (Criminal appeal from
                                                                                Common Pleas Court)

    Defendant-Appellant                   :

                                                                    :

. . . . . . . . . .

## O P I N I O N

Rendered on the ____29th____ day of ____March____, 2013.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CANDI S. RAMBO, Atty. Reg. No. 0076627, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}   After the trial court overruled her motion to suppress evidence, Lori

Varney pled no contest to illegal conveyance of a drug of abuse (crack cocaine) into the grounds of a detention facility and to possession of crack cocaine in an amount equal to or more than 10 grams but less than 25 grams, both third-degree felonies.  The court sentenced Varney to nine months in prison for each count, to be served concurrently, a nine-month driver's license suspension, and court costs; the court waived the mandatory fine due to Varney's indigence.

**{¶ 2}**  Varney appeals from her conviction, claiming that the trial court erred in denying her motion to suppress.  For the following reasons, the trial court's judgment will be affirmed.

**{¶ 3}**  When ruling on a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."  *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994).  In reviewing a trial court's decision on the motion to suppress, an appellate court must accept the trial court's findings of fact as true, if they are supported by competent, credible evidence.  *State v. Burnside*, 110 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  The appellate court must then determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.  *Id.*

**{¶ 4}**  A hearing on Varney's motion was held in March 2012.  Sergeant Michael Brem and Detective Andrew McCoy testified for the State; Varney testified on her own behalf.  On April 11, 2012, the trial court orally overruled the motion, with the following findings of fact:

{¶ 5} On February 11, 2011, a Dayton police detective informed Sergeant Michael Brem of the Montgomery County Sheriff's Office that a confidential informant had told the detective that Varney was being held in the Montgomery County Jail and that Varney possessed crack cocaine in the amount of approximately one ounce that belonged to Roger Carter. Carter was a "well-known purported Harrison Township drug dealer" who was also allegedly involved in prostitution. Sgt. Brem, as the supervisor of the Regional Agencies Narcotics and Gun Enforcement (RANGE) Task Force, was familiar with Carter, and he was aware of an ongoing investigation that the task force was conducting regarding Carter.

{¶ 6} Sgt. Brem, along with Detectives Andrew McCoy and Diane Taylor (also from the Sheriff's Office) met with Varney in a meeting room at the Montgomery County Jail. Varney was at the jail because of a probation violation. Based on the information that was available to the officers at the time, the officers believed that Varney was due to be released in approximately one week.

{¶ 7} Det. McCoy informed Varney of her *Miranda* rights, using the card provided to officers by the Montgomery County Prosecutor's Office. Varney agreed to talk to the officers. Det. McCoy then confronted her with the information concerning her possession of drugs. Varney initially denied that she possessed any crack cocaine.

{¶ 8} Shortly after Varney's initial denial, Sgt. Brem took over the interview with Varney. Sgt. Brem's ultimate goal was to obtain Varney's assistance in gathering information regarding Carter. Operating under the belief that Varney was holding crack cocaine for Carter, Sgt. Brem told Varney that he understood why she would be fearful of Carter, but that if she cooperated by producing the crack cocaine and then providing information regarding Carter, he would inform the prosecutor of that cooperation. Sgt.

Brem further informed Varney that, if she cooperated, there was help she could receive, such as drug treatment and other services, to assist her in getting away from Carter and the lifestyle related to being around him. He further told Varney that, upon her release, she should contact Detective Tony Hudson, a member of the RANGE Task Force, who was leading the investigation of Carter. Sgt. Brem told Varney that if she gave up the drugs, "we will be done." Varney continued to deny that she possessed any drugs.

{¶ 9} Sgt. Brem then began to talk with Varney about her family and her family situation. As stated by the trial court, "This evidently hit a cord [sic] with Ms. Varney, because she teared up and became quite emotional. Somewhere in this mix, Sergeant Brem also told Ms. Varney that if she did not voluntarily surrender the drugs, he would obtain a search warrant for a strip search. The statement regarding the warrant, at least at that time * * * was probably a false threat based upon the information regarding the drugs that was possessed by Sergeant Brem and the other detectives."

{¶ 10} At this juncture, Varney decided to admit that she possessed crack cocaine. The trial court found that there was "no precise way to determine why this decision was made." Varney retrieved the crack cocaine from her person and handed it to a female corrections officer, who turned it over to the detectives.

{¶ 11} Varney did not contact Det. Hudson or otherwise cooperate in the Roger Carter investigation after her release from jail. Ultimately, on February 9, 2012, Varney was indicted for possession of crack cocaine and the conveyance of the crack cocaine into the jail.

{¶ 12} The trial court did not address Varney's testimony in detail in its factual

findings. Varney testified that she was brought to a room in the jail, where she was questioned by Sgt. Brem, Det. McCoy, and Det. Taylor. Varney was seated, while the officers stood. Varney did not recall whether her *Miranda* rights were read to her. (Sgt. Brem and Det. McCoy both testified that Det. McCoy gave *Miranda* warnings and, as stated above, the trial court credited this testimony.)

{¶ 13} Varney testified that the conversation began with a discussion that Varney was in jail on a probation violation; Varney stated that she told the officers that she had just been sentenced to 60 days in jail. Sgt. Brem then started asking her questions about Roger Carter, such as how much money and drugs he kept in his house and where things were located. Varney told the officers some of Carter's "hiding places" and how much drugs and money he kept in his home. Varney testified that the officers told her that she would not face charges if she gave the officers the drugs she had on her person and, in response to that promise, Varney admitted that she had drugs on her and retrieved the drugs for the officers. She testified that she did not turn over the drugs due to the threat of a strip search. Varney testified that she was not told to contact, and did not get any contact information for, Det. Hudson. The conversation lasted for 15 or 20 minutes.

{¶ 14} In making its findings, the trial court expressly found the testimony of Sgt. Brem and Det. McCoy to be credible and believable. It also found Varney's testimony, as a whole, to be credible and believable, but did not believe her specific testimony that Sgt. Brem promised her that she would not be charged with drug possession if she voluntarily produced the drugs on her person.

{¶ 15} Applying the facts to the legal standard, the trial court found that Varney

was properly advised of her *Miranda* rights by Det. McCoy and that she knowingly and voluntarily waived those rights. The court further found that her statements to the officers were made voluntarily. The court specifically ruled that Varney's will was not overcome by Sgt. Brem's statements that (1) if she confessed to the drug possession, "we will be done," (2) if she cooperated by confessing to drug possession and providing information about Carter, the officers would try to help her by talking to the prosecutor and providing her other assistance, and (3) if she did not confess, he would get a warrant for a strip search. A written entry denying Varney's motion, adopting the court's oral pronouncement, was filed on April 12, 2012.

{¶ 16} On appeal, Varney claims that the trial court erred in failing to grant the motion to suppress on the ground that her statements were involuntary. Varney does not challenge the trial court's ruling that she knowingly, intelligently, and voluntarily waived her *Miranda* rights.

{¶ 17} Whether a statement was made voluntarily and whether an individual knowingly, voluntarily, and intelligently waived his or her *Miranda* rights are distinct issues. *State v. Eley*, 77 Ohio St.3d 174, 178, 672 N.E.2d 640 (1996); *State v. Kelly*, 2d Dist. Greene No. 2004-CA-20, 2005-Ohio-305. Regardless of whether *Miranda* warnings were required and given, a defendant's statement may have been given involuntarily and thus be subject to exclusion. *Kelly* at ¶ 11.

{¶ 18} A defendant's statements to police after a knowing, intelligent, and voluntarily waiver of the individual's *Miranda* rights are presumed to be voluntary. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "The *Miranda*

presumption applies to the conditions inherent in custodial interrogation that compel the suspect to confess. It does not extend to any actual coercion police might engage in, and the Due Process Clause continues to require an inquiry separate from custody considerations and compliance with *Miranda* regarding whether a suspect's will was overborne by the circumstances surrounding his confession." *State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 14 (2d Dist.), citing *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

{¶ 19} "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), at paragraph two of the syllabus, overruled on other grounds, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). *See also State v. Brewer*, 48 Ohio St.3d 50, 58, 549 N.E.2d 491 (1990); *State v. Beaty*, 2d Dist. Montgomery No. 24048, 2011-Ohio-5014, ¶ 16. "Promises of leniency by the police * * * are improper and render an ensuing confession involuntary." *State v. Holtvogt*, 2d Dist. Montgomery No. 24748, 2012-Ohio-2233, ¶ 13, citing *Hopfer*, 112 Ohio App.3d 521, 547, 679 N.E.2d 321 (2d Dist.1996).

{¶ 20} The State has the burden to show by a preponderance of the evidence that a defendant's confession was voluntarily given. *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978).

{¶ 21} Varney claims that her will was overborne by several of Sgt. Brem's

statements. First, she argues that the detective said that he knew that the drugs belonged to Roger Carter and that "if she was willing to cooperate with us, we would help her out." Varney argues that she reasonably understood that, because the drugs did not belong to her, she would not be charged if she relinquished them to the police. Second, she emphasizes that Sgt. Brem explained that "if she would call us, that there was things that we – that there's things in place in the criminal justice system that we could do to help her." Varney argues that these services were represented as services she could utilize only if she turned over the drugs. Third, she points to Sgt. Brem's statement, "Look, I know you have the crack-cocaine on you. You know, you just give it over to us, and we can be done." Varney argues that a reasonable person would have interpreted his statement to mean that no charges would be filed if she relinquished the crack-cocaine.

{¶ 22} Upon reviewing the totality of the circumstances, we cannot conclude that the trial court erred in determining that Varney's statements were voluntary. At the time of the interview, Varney was a 43-year-old woman who had prior experience with the criminal justice system. Although Varney was seated in a small room with three officers who were standing, there is no evidence that she found the environment to be unduly coercive. The encounter was relatively short, lasting 15 to 20 minutes, by Varney's estimate. At some point during the interview, Sgt. Brem threatened to get a warrant for a strip search, but Varney was not strip searched, and she gave no indication during her testimony that the threat of a strip search induced her to turn over the crack cocaine. Sgt. Brem also talked to her about her family, which made Varney emotional but, again, there is no evidence that Varney retrieved the drugs for this reason.

**{¶ 23}** Varney testified at the suppression hearing that she was promised by the officers that she would not face any charges if she gave them the drugs and that she decided to tell the officers about the drugs due to these assurances. After hearing Varney's, Sgt. McCoy's, and Sgt. Brem's testimony, the trial court found that no such promise was made, and we conclude that it was not unreasonable for the trial court to credit the officers' testimony, which supported its finding. Sgt. Brem acknowledged that he offered Varney assistance in the form of drug treatment, safe houses, and other services in exchange for her cooperation, that he told her that he knew the drugs belonged to Roger Carter, and that they "would be done" if she turned over the drugs. However, the trial court rejected Varney's testimony that Sgt. Brem expressly told her that she would not face charges in exchange for her giving him the crack cocaine, and the trial court reasonably concluded that Brem did not make false promises of leniency through his other statements.

**{¶ 24}** Construing the circumstances as a whole, the trial court did not err in concluding that Varney's statements were voluntary and in denying her motion to suppress.

**{¶ 25}** The assignment of error is overruled.

**{¶ 26}** The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, P.J. and HALL, J., concur.

Copies mailed to:

R. Lynn Nothstine
Candi S. Rambo
Hon. Michael L. Tucker