[Cite as *State v. Russell*, 2012-Ohio-4316.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2011-CA-10 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2009-CR-873 |
| v. | : | |
| | : | |
| CHRISTOPHER RUSSELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 21st day of September, 2012.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

ROBERT L. SCOTT, Atty. Reg. #0086785, 8801 North Main Street, Suite 200, Dayton, Ohio 45415
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}   Defendant-appellant Christopher Russell appeals from his convictions for Rape, Gross Sexual Imposition, Pandering Obscenity Involving A Minor, and Sexual Battery, and the imposition of a 75-year sentence.  Russell contends that the trial court abused its discretion when it overruled his motion to suppress statements he made during his interview

with a police detective, because those statements were a result of coercion and threats. Russell also contends that the trial court erred in denying his motion to sever counts nine and ten of the indictment from the remaining counts because the prejudice of hearing evidence from two separate incidents separated by a number of years outweighed the probative value of the evidence. Finally, Russell argues that the trial court abused its discretion in giving him maximum sentences despite his lack of a prior, criminal record.

{¶ 2} We conclude that the trial court did not err when it overruled Russell's motion to suppress, because Russell failed to show that his confession was a result of coercive police activity. Furthermore, the trial court did not abuse its discretion in overruling Russell's motion to sever because he failed to demonstrate the requisite prejudice. The trial court also did not abuse its discretion in giving Russell maximum sentences given the nature of Russell's extensive criminal activity and the court's consideration of the principles and purposes of sentencing. Accordingly, the judgment of the trial court is Affirmed.

### I. Russell Sexually Abused His Daughter Over The Course of
### A Number of Years Across Two Counties

{¶ 3} Russell began sexually abusing his biological daughter (the Victim) around the time of her ninth birthday. At that time, the Victim lived with her family in Scioto County. Russell was unemployed at the time and stayed at home during the day with the Victim and her brother, who is deaf and autistic and had been diagnosed with cerebral palsy. Trial Transcript, pp. 199-206. Russell began the sexual abuse of the Victim by telling her that he wanted to do something special for her. *Id.* at 206-207. He explained to her that he

wanted to put his mouth on her vagina. Russell then took the Victim to his bedroom, laid her on her back with her legs open, and proceeded to put his tongue in her vagina and on her clitoris. *Id.* at 207-208. Russell also put his fingers in the Victim's vagina and talked to her about breaking her hymen. *Id.* at 209.

{¶ 4} After the first incident of abuse, Russell began doing more sexual acts with the Victim and told her not to tell her mother about them. *Id.* at 210-212. Russell had the Victim give him "hand jobs" and "blow jobs," after instructing her how to do so. *Id.* at 214, 217-218. He also taught her how to put on a condom and explained lubrication to her. *Id.* at 216. Russell had the Victim perform oral sex on him and gave her the option of either swallowing his ejaculation or finding something to catch it. *Id.* at 217-218. Eventually, Russell had sexual intercourse with the Victim. *Id.* at 218-219. The Victim told Russell that it hurt when he put his penis in her vagina and there were occasions when she had to kick him off of her during sexual intercourse. *Id.* at 219-220. Russell occasionally gave the Victim fruit-punch-flavored alcohol or sleeping pills to help facilitate the Victim's willingness to engage in sexual intercourse with him. *Id.* at 220-221. Russell also took pictures of the Victim while she was nude. *Id.* at 226-228. Russell instructed her how to pose for the pictures. *Id.* at 227, 230-231.

{¶ 5} Despite Russell's warnings not to, the Victim eventually disclosed to her mother what her father had been doing to her. The Victim's mother was angry and Russell left to stay with his parents in Clark County for about one month. *Id.* at 232-235. Subsequently, the Victim, her mother, and her brother moved to Clark County to stay with Russell and his parents. The Victim was told by a member or members of her family (it is not

clear by whom) that Russell's sexual abuse was a family secret and she was not to tell anyone about the abuse. *Id.* at 237-238.

{¶ 6} While the family was living in Clark County, the Victim told two of her friends about what Russell had done to her. *Id.* at 239-240. Some of the Victim's teachers and her guidance counselor approached the Victim in the Spring of 2008 and asked her about what Russell had done. *Id.* at 240-242. The Victim revealed the details of Russell's sexual abuse. *Id.* The Victim also gave a statement to a sheriff's deputy about Russell's abuse. *Id.* at 244-245. The Victim's paternal grandmother, however, convinced the Victim that she needed to recant the story of abuse in order to prevent the family from being broken up. Consequently, the Victim told a detective from the Scioto County Sheriff's Department and a representative of the Clark County Department of Job and Family Services that she had made up the story, and the Scioto County investigation was closed. *Id.* at 246-255.

{¶ 7} After recanting her story, the sexual abuse continued in Clark County. Russell continued to rub the Victim's vagina and perform digital penetration and oral sex on her. *Id.* at 256-257. Russell also showed the Victim movies of children having sex with adults to illustrate that she was not the only one doing these types of things. *Id.* at 260-261.

{¶ 8} In the Summer of 2008, the Victim wanted to attend a church camp, but her parents would not give her their permission. In order to get her father to allow her to go to camp, the Victim offered to perform oral sex on him. *Id.* at 266-267. After the Victim performed oral sex, he gave her permission to attend camp. *Id.* at 267.

{¶ 9} In the Summer of 2009, Russell began pressuring the Victim to live like a nudist so that they could be nude around each other at home. *Id.* at 268-269, 274. Later that

Summer or early Fall, the Victim told her youth minister at church about some of Russell's sexual abuse. *Id.* at 274. The next day, the Victim met with individuals from the Clark County Sheriff's Department and the Clark County Department of Job and Family Services. *Id.* at 275. The sheriff's deputy had the Victim make a telephone call to Russell, during which the Victim and Russell discussed the sexual abuse that had occurred. *Id.* at 275-276. This telephone call was recorded by the police. *Id.* at 276, 656-657.

{¶ 10} Russell was brought into the Clark County Sheriff's office for questioning. *Id.* at 660. He received an explanation of his Miranda rights and signed a waiver of those rights. *Id.* at 660-661. During his interview with Detective Debra Strileckyj, Russell admitted to receiving fellatio from the Victim and touching her in the vaginal area on several occasions. *Id.* at 738. He also admitted to wanting to lie in bed naked with the Victim as part of his nudism philosophy. *Id.* at 735.

{¶ 11} Russell was arrested. While he was in jail, Russell placed calls to his mother and his wife during which he confessed to the allegations that the Victim had made against him. *Id.* at 739. Russell also admitted to taking pictures of the Victim while she was nude. *Id.* at 741-742.

## II. Course of the Proceedings

{¶ 12} In 2009, a Clark County Grand Jury returned a ten-count indictment against Russell, charging him with five counts of Rape, in violation of R.C. 2907.02(A)(1)(b), two counts of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4), one count of Pandering Obscenity Involving a Minor, in violation of R.C. 2907.321(A), and two counts of

Sexual Battery, in violation of R.C. 2907.03(A). Counts one through eight of the indictment concerned conduct that occurred in Scioto County between November 3, 2002, and August 31, 2006. Counts nine and ten (Sexual Battery) concerned conduct that occurred in Clark County between September 1, 2006 and July 31, 2009.

{¶ 13} Russell filed a motion to suppress any statements he made during his interview with Detective Strileckyj. (Dkt. 11). Russell identified the following three instances during his interview with police that were relevant to his motion to suppress: "minute 25, minute 38 and 1:08 of the interview." (Dkt. 12). Russell's memorandum in support of his motion to suppress stated, in part:

> At minute 25, the detective asked Mr. Russell a question. Mr. Russell pondered the answer, stating "Let me think," then stated, "I need to talk to that attorney," followed by the answer to the question, "No." The Detective did not pause, inquire about the statement or cease the interview. The Detective ignored Mr. Russell's request.

> Again, at 1 hour and 8 minutes, Mr. Russell, in very plain and unambiguous language, stated he did not want to talk any more. This was an invocation of his right to remain silent.

> * * *

> Mr. Russell * * * requested counsel early in the interview and that request was ignored. Thirteen minutes later, at the 38th minute, he was told he needed to "man up" and to "take some lumps" and his family would never be together again as long as he kept hiding behind a lie. This is a threat. Talk or

your family will be broken up, forever.[]

Again, after another 40 minutes of interrogation, he attempted to assert his rights again, by attempting to remain silent. Again he was rebuffed that the interrogation continued.

In light of the three violations of Mr. Russell's Constitutional rights, the entire interview should be suppressed. (Dkt. 12, pp. 2-3).

{¶ 14} The trial court granted Russell's motion to suppress in part, and overruled it in part. (Dkt. 15). In particular, the trial court found that Russell unambiguously invoked his right to remain silent at the 67 minutes and 45 seconds mark of his interview with police. The trial court did not find that Russell had invoked his right to counsel or right to remain silent prior to that point. Therefore, the trial court denied Russell's motion to suppress his statements made prior to his invocation of his right to remain silent at the 67 minutes and 45 seconds mark, but granted his motion to suppress statements made after that point.

{¶ 15} Russell subsequently moved to sever counts one through eight of the indictment, which involved Russell's alleged conduct occurring in Scioto County, from counts nine and ten of the indictment, which involved Russell's alleged conduct occurring in Clark County. (Dkt. 16). According to Russell, he would be prejudiced if the counts were not severed because the evidence against him relating to counts one through eight was weak compared to the evidence against him on counts nine and ten. Furthermore, Russell contended that severing the counts as he requested would protect his desire to testify regarding counts nine and ten but not testify regarding counts one through eight. The trial court overruled Russell's motion to sever. (Dkt. 26).

{¶ 16} At the jury trial, both the Victim and Russell testified. The jury returned guilty verdicts on all ten counts as charged in the indictment. (Dkt. 30-39). Following a sentencing hearing, the trial court sentenced Russell to ten years on each of counts one through five and to five years on each of counts six through ten. The sentences were ordered to be served consecutively with each other, for a total of 75 years. (Dkt. 41). Russell was classified as a Tier II sex offender on counts six through eight, and received mandatory post release control for a period of five years on each of the ten counts.

{¶ 17} From the judgment entry of conviction and sentence, Russell appeals.

### III. Russell's Confession Was Not a Product of Coercion

{¶ 18} Russell's First Assignment of Error states:

THE TRIAL COURT ERRED WHEN DENYING THE DEFENDANT/APPELLANT'S PRE-TRIAL MOTION TO SUPPRESS.

{¶ 19} Our review of a trial court's denial of a motion to suppress presents a mixed question of fact and law. *State v. Ray*, 2d Dist. Montgomery No. 24536, 2012–Ohio–840, ¶ 8. "We accept the trial court's view of the facts, provided its findings are supported by competent, credible evidence, because '[w]hen considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.' " *Id.*, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. However, "we determine independently whether the evidence satisfies the applicable legal standard." *Id.*, citing *State v. Mackey*, 2d Dist. Montgomery No. 22244, 2008-Ohio–3621, ¶ 9.

{¶ 20} Russell's motion to suppress sought to suppress statements made after three different points during his interview with the police. The trial court granted his motion with respect to the third point in the interview, at the 67 minutes and 45 seconds mark. Russell contends that the trial court erred in failing to suppress statements made at the second point in the interview, when he was allegedly coerced into confessing based on threats made to him at approximately the 38-minute mark.

{¶ 21} Russell's memorandum in support of his motion to suppress stated, in part: "Thirteen minutes later, at the 38th minute, he was told he need to 'man up' and to 'take some lumps' and his family would never be together again as long as he kept hiding behind a lie." (Dkt. 12). In his memorandum, Russell characterized the officer's remark as a threat to break up the family if Russell did not talk, but we find no support for this characterization in the audiovisual recording of the interview. Russell contends that the statements made to him by Detective Strileckyj constituted threats that coerced him into confessing to crimes that he did not commit and convinced Russell that his punishment would be counseling, rather than imprisonment, if he confessed to the crimes. We do not agree.

{¶ 22} In *State v. Jackson*, 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 19–22, 28–29, we wrote:

> The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee that no person in any criminal case shall be compelled to be a witness against himself. The concern that animated the framers to adopt the Fifth Amendment was that coerced confessions are inherently untrustworthy. *Dickerson v. United States* (2000),

530 U.S. 428, 120 S.Ct. 2326. "A free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt * * * but a confession forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape * * * that no credit ought to be given it." *Id.* at 433.

A suspect may waive his constitutional right against self-incrimination, provided that waiver is voluntary. A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515; *State v. Otte*, 74 Ohio St.3d 555, 660 N.E.2d 711, 1996-Ohio-108.

The issues of whether a confession is voluntary, and whether a suspect has been subjected to custodial interrogation so as to require *Miranda* warnings, are analytically separate issues. * * * The due process clause continues to require an inquiry, separate from custody considerations, concerning whether a defendant's will was overborne by the circumstances surrounding the giving of his confession. *Dickerson*, at 434. This due process test takes into consideration the totality of all the surrounding facts and circumstances, including the characteristics of the accused and the details of the interrogation. *Id.* Factors to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of

the interrogation; the existence of physical deprivation or mistreatment; and the existence of threats or inducements.

    * * * If all of the attendant circumstances indicate that the confession was coerced or compelled, it cannot be used to convict the defendant. That determination depends upon a weighing of the pressure to confess against the power of resistance of the person confessing. *Id.*

    * * *

    "The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police. * * *

    "When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity. On the other hand, if in addition to the foregoing benefit, or in the place thereof, the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible. The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear." (Citations omitted.)

{¶ 23} We have reviewed the videotape of Russell's interview with Detective Strileckyj.[1] While it is true that Detective Strileckyj used various interrogation techniques and lectured Russell to tell the truth during various points of the interview, we conclude that Detective Strileckyj did not use any inherently coercive tactics. Furthermore, although Detective Strileckyj did tell Russell that he needed to take some lumps, this was a message that he needed to tell the truth and take responsibility for his actions. Contrary to Russell's contentions, Detective Strileckyj's questioning and lecturing did not threaten Russell that he needed to confess in order to prevent his family from being taken away from him.

{¶ 24} Russell also contends that he hoped to escape jail time for his abhorrent and illegal behavior. This belief was not reasonable or realistic. More importantly, however, Detective Strileckyj did not do anything to create this belief. She never offered him a deal that would allow him to avoid prison in exchange for a confession to the crimes with which Russell ultimately was charged. Furthermore, Detective Strileckyj did not do or say anything that reasonably created an impression that Russell would avoid prison if he confessed to the crimes with which he was ultimately charged. Therefore, the trial court did not err in overruling Russell's motion to suppress.

{¶ 25} Russell's First Assignment of Error is overruled.

### IV. Trying All Ten Counts Together Did not Unfairly Prejudice Russell

{¶ 26} Russell's Second Assignment of Error states:

---

[1] The record before us does not contain a written transcript from Russell's interview with Detective Strileckyj. The record does include a compact disc containing an audiovisual recording of Russell's interview.

THE TRIAL COURT ERRED IN ITS EXERCISE OF DISCRETION WHEN IT DENIED APPELLANT'S MOTION TO SEVER FOR SEPARATE TRIALS, WHEREBY EXTREMELY PREJUDICIAL TESTIMONY AND EVIDENCE PREJUDICIAL TO APPELLANT'S CASE WAS UNFAIRLY AND UNREASONABLY ADMITTED INTO EVIDENCE.

{¶ 27} We review a trial court's denial of a motion to sever for an abuse of discretion. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). The term "abuse of discretion" has been defined as a decision that is "unreasonable, arbitrary or unconscionable." (Citations omitted.) *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶ 28} A decision whether to grant a motion to sever certain counts of an indictment from other counts of the indictment is guided by Crim.R. 8 and 14. Crim.R. 8(A) states:

Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.

{¶ 29} Crim. R. 14 provides, in part:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the

court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. * * *

{¶ 30} In *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 49-50, the Ohio Supreme Court held:

_The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged _are of the same or similar character._ " *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293. Crim.R. 8(A) also allows joinder of two or more offenses that _are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct._ Notwithstanding the policy in favor of joinder, an accused may move to sever counts of an indictment on the ground that he or she is prejudiced by the joinder of multiple offenses. See Crim.R. 14. An appellate court will reverse a trial court's decision to deny severance only if the trial court has abused its discretion. *Lott,* 51 Ohio St.3d at 163, 555 N.E.2d 293.

The state may rebut a defendant's claim of prejudicial joinder in two ways. The first way is by satisfying the _other acts_ test. *Id.* If in separate trials the state could introduce evidence of the joined offenses as _other acts_ under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. *Id.* See, also, *State v. Coley* (2001), 93 Ohio St.3d 253, 259_260, 754 N.E.2d 1129. The state may also negate a claim of prejudice by satisfying the less stringent _joinder test,_ which requires a showing _that evidence of each crime

joined at trial is simple and direct._ *Lott,* 51 Ohio St.3d at 163, 555 N.E.2d 293; see, also, *State v. Torres* (1981), 66 Ohio St.2d 340, 344, 20 O.O.3d 313, 421 N.E.2d 1288.

**{¶ 31}** Russell contends that "[t]he trial court should have found that the inflammatory and prejudicial nature of the Scioto County evidence outweighed its probative value." According to Russell, "the trial court, specifically the jury, found the defendant guilty on all ten counts taking the evidence of two separate incidents with different facts and scenarios in total occurring years apart from one another." (Brief, p. 13). We do not agree.

**{¶ 32}** We conclude that Russell's claims of prejudice are rebutted in the second way discussed by the Supreme Court in *LaMar.* The evidence of each crime committed by Russell was "simple and direct,_ consisting of Russell's confessions, the Victim's testimony, and the photographic evidence presented to the jury. Consequently, the trial court did not abuse its discretion in denying Russell's motion to sever.

**{¶ 33}** We also note that Russell appears to be referencing the Evid.R. 403 standard in his appellate brief when contending that all ten counts should not have been joined in one trial. Evid.R. 403(A) provides that relevant evidence is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice * * * ." Although Russell may have suffered prejudice when additional evidence of his abhorrent and illegal behavior was presented to the jury, we do not conclude that the prejudice resulting from this evidence was "unfair."

**{¶ 34}** Finally, Russell contends that he wanted to testify concerning some of the

counts, but not concerning others. Russell cites no authority for the proposition that a trial court must sever counts for trial to accommodate the defendant's trial strategy, and we are not persuaded that a trial court has a duty to do so.

**{¶ 35}** Russell's Second Assignment of Error is overruled.

### V. The Record Supports The Imposition of Maximum Sentences

**{¶ 36}** Russell's Third Assignment of Error states:

THE TRIAL COURT ERRED IN THE EXERCISE OF ITS DISCRETION WHEN IT IMPOSED SENTENCING UPON THE APPELLANT.

**{¶ 37}** Russell contends that the trial court failed to provide support on the record regarding why Russell received maximum sentences, failed to review the presentence investigation on the record, and did not take into consideration Russell's lack of a prior criminal record. Accordingly, Russell contends that the trial court abused its discretion in sentencing him to the maximum sentence available. We do not agree.

**{¶ 38}** The trial court has discretion to impose any sentence within the authorized statutory range, and the court is not required to make findings or to give its reasons for imposing maximum, consecutive, or more than minimum sentences. *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus. Nevertheless, in exercising its discretion the trial court must consider the statutory policies applicable to every felony offense, including those set out in R.C. 2929.11 and 2929.12. *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 39} R.C. 2929.11(A) and R.C. 2929.12 (A)-(E) set forth a number of principles, purposes, and facts to be considered by the trial court in determining a defendant's sentence. In *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 43, we wrote:

> Although the trial court did not specifically cite either statute during the sentencing hearing, its judgment entry stated that it had "considered the record, oral statements of counsel, the defendant's statement, the pre-sentence investigation report, the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and [had] balanced the seriousness and recidivism factors under Ohio Revised Code Section 2929.12._ A trial court speaks through its journal entries, and [Defendant's] sentence is not contrary to law merely because the trial court failed to cite either statute during the sentencing hearing. *State v. Cave,* Clark App. No. 09_CA_6, 2010-Ohio-1237, 2010 WL 1138931, _ 10. _Furthermore, even if there is no specific mention of those statutes in the record, 'it is presumed that the trial court gave proper consideration to those statutes.' _ *State v. Miller,* Clark App. No. 09CA28, 2010-Ohio-2138, 2010 WL 1932041, _ 43, quoting *[State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, Fn.4.

{¶ 40} At the sentencing hearing, the trial court stated, in part:

> I don't believe I've ever experienced a case where any child has had to endure as much – I'm gonna take that back, perhaps one other case – as much abuse for as long a period of time but certainly not another case where opportunities were had to stop the abuse sooner and those people who should have taken that opportunity failed to do so, leaving the child to continue

suffering the abuse.

Actually, I was surprised at how the victim handled her time on the witness stand, and it was a lengthy period of time; but there was a lot to testify regarding.

There was an attempt to raise this child in such a way that she believed that this abuse was right, it's the way life was supposed to be. Fortunately, that was one lesson she never completely learned. It always felt wrong. Finally, she was able to get out, get the information out to somebody who supported her.

She's been through therapy, continues in therapy, doing well with it. She's leading as normal a life as you could hope for almost anyone, but she still has to deal with the years of abuse.

The offenses themselves are among the most serious. The Court takes into consideration how serious the offenses are. The Court takes into consideration the age of the victim, starting at 9 years of age, as far as the convictions are concerned. The Court takes into consideration the age of the Defendant – he is currently 40 – the relationship between the Defendant and the victim.

He was the victim's not only biological father but the father that was raising her, the one that was supposed to be nurturing her, teaching her right from wrong, teaching her valuable lessons that she would need to get through life as a well-adjusted adult. Instead, what he was teaching her or trying to get

her to believe was how to be maladjusted and what would make him happy.

This young girl was living a nightmare. Perhaps during the time when a lot of this was going on, she wasn't sure it was a nightmare because that's not what she was being told by the person she looked to for guidance and protection.

Purpose of sentencing in every case is to punish the offender and to protect the community. Protecting the community is not just limited to making sure this particular Defendant does not continue to violate the laws and rights of others but to also tell others in the community these are the consequences if you're considering engaging in this type of activity. (Disposition Tr. 10-12).

{¶ 41} In the judgment entry of conviction, the trial court stated, in part: "The Court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and has balanced the seriousness and recidivism factors Ohio Revised Code Section 2929.12."

{¶ 42} The trial court's statements on the record and in its judgment entry of conviction and sentence satisfied its duty to consider the principles and purposes of sentencing. The trial court is not required to make findings or give its reasons for imposing maximum, consecutive, or more than minimum sentences. *Foster,* at paragraph seven of the syllabus. Despite this, the trial court did explain on the record at the sentencing hearing many of its reasons for imposing maximum sentences. The fact that Russell had no prior, criminal

record is one factor weighing in his favor for a less harsh sentence. But Russell's contentions ignore the overwhelming factors favoring a harsher sentence. The trial court did not abuse its discretion in imposing maximum, consecutive sentences.

{¶ 43} Russell's Third Assignment of Error is overruled.


## VI. Conclusion

{¶ 44} All of Russell's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

GRADY, P.J. and FROELICH, J., concur.

Copies mailed to:

Lisa M. Fannin
Robert L. Scott
Hon. Richard J. O'Neill