[Cite as *State v. Russell*, 2021-Ohio-4106.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-17 |
| | : | |
| v. | : | Trial Court Case No. 2009-CR-873 |
| | : | |
| CHRISTOPHER M. RUSSELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of November, 2021.

. . . . . . . . . . .

IAN RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

CHRISTOPHER M. RUSSELL, #A646-718, 670 Marion Williamsport Road, P.O. Box 1812, Marion, Ohio 43302
      Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Christopher M. Russell appeals from the trial court's order denying his pro se motion for leave to file a motion for new trial. We affirm the judgment of the trial court.

{¶ 2} In 2009, a Clark County grand jury returned a ten-count indictment against Russell, charging him with five counts of rape, two counts of gross sexual imposition, one count of pandering obscenity involving a minor, and two counts of sexual battery. The first eight counts involved conduct that occurred in Scioto County between November 3, 2002, and August 31, 2006; counts nine and ten (the sexual batteries) involved conduct that occurred in Clark County between September 1, 2006 and July 31, 2009. *State v. Russell*, 2d Dist. Clark No. 2011-CA-10, 2012-Ohio-4316, ¶ 12 ("*Russell I*") (affirming Russell's conviction on all counts and his 75-year sentence). The victim was Russell's biological daughter. He was convicted on all counts and sentenced to an aggregate term of 75 years in prison.

{¶ 3} Russell filed a motion for declaratory judgment in August 2016, seeking a declaration that prosecutors committed misconduct and requesting that the trial judge recuse himself. The trial court denied the motion. Russell appealed, and this court affirmed the trial court's judgment. *State v. Russell*, 2017-Ohio-7198, 95 N.E.3d 1142 (2d Dist.) ("*Russell II*").

{¶ 4} Russell and his family also filed various motions regarding the return of personal property that was seized from his home in the course of his arrest. The trial court concluded that some of the items were identified and admitted as exhibits during Russell's trial and accordingly were not returnable. When Russell appealed from that determination, this Court affirmed the judgment of the trial court. *State v. Russell*, 2018-

Ohio-518, 106 N.E.3d 248, ¶ 1 (2d Dist.) ("*Russell III*").

{¶ 5} In his September 30, 2019 motion for leave to file a motion for new trial, Russell asserted that he sought "leave to file for a new trial pending discovery of evidence in the possession of the State of an exculpatory nature." He asserted that his home was searched on October 5, 2009 pursuant to a warrant, that several items were seized, and that the items were "inventoried" on Clark County Sherriff's property receipt 14495. Russell acknowledged that items of a non-evidentiary nature were eventually returned but asserted that items 6, 8, 10, and 19 were not returned. Russell stated that he had filed various motions in the trial court and the court of appeals in an attempt to have the items returned, noting they "contained potentially exculpatory information," but the items had not been returned.

{¶ 6} Russell further asserted that the State was in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for refusing to produce this exculpatory material, which was subject to discovery. Specifically, Russell cited the trial transcripts "at 596:24-597:25,"[1] where the court set "a date of last offense as a limit to the admissibility of evidence"; Russell argued that "information taken from the property not yet returned was admitted in violation of this order." He argued that "[d]ata and forensics from the items still in the court's possession still contain information relevant to the guilt of the Defendant." Russell asserted that the information he requested was not related to any sexual conduct but was relevant as impeachment evidence.

---

[1] On August 17, 2020, this Court ordered the clerk of the court of appeals to transfer the transcripts of Russell's trial previously filed in his direct appeal to this appeal. On October 15, 2020, this Court issued an entry that stated that the "clerk has informed this court that those transcripts cannot be located." We note that there was no hearing on Russell's motion.

{¶ 7} Russell sought his daughter's medical records from six health care providers and "information" from two churches concerning his daughter's attendance at and payments for summer camps.

{¶ 8} With respect to item 6, a Kodak EasyShare CW 330 Digital camera, Russell asserted that no "offensive" images were tied to this device, but images taken by this camera were shown at trial. According to Russell, the digital images contained meta data that showed when the images were taken, the images "were fairly recent to the time of the allegations," and therefore the images needed to be examined to determine whether they were admissible due to the time-limit the trial court placed on evidence to be submitted.

{¶ 9} Item 8 was a Dell Inspiron B-130, and Russell argued that the "data from this device" may have also been outside the time limits set by the court. "Drive-cleaning software had been installed, and per the memory of the Defendant, been run to completely zero the device[']s hard drive." Russell argued that all data on the device, "even data recovered from unallocated space, would be after the date set by the court," and that the Ohio Bureau of Criminal Investigation "should be able to identify and verify the existence and date of the last use of the software."

{¶ 10} With respect to Item 10, a Mercury Eros Computer, which Russell described as "a home-built system that had been constructed within six months of the date of the search," Russell argued that the construction of the device could be verified by comparing the part numbers of the components with e-mail data from "newegg.com" on his Yahoo account to establish that any data retrieved from the computer was "clearly outside the bounds set by the court."

{¶ 11} Russell asserted that Item 19, condoms and a lubricant, were purchased after the date set by the court, which could be verified by "a check of the lot numbers on these items."

{¶ 12} With respect to the relevance of his daughter's medical records, Russell argued:

It is requested of the court to order the medical records of B.R. related to concussions and memory loss and either release them to the Defendant or arrange for appropriate legal and expert assistance. It was claimed under examination at trial that no diagnosis was given for the memory loss or hallucinations, therefore the opinions of the examining physicians are relevant. Further, as the hallucinations were claimed to be faked, statements in the medical records relevant to showing the Defendant was under the impression these were real is relevant to support certain defense claims, including the claim the hallucinations began before any alleged incident, therefore the fakery would not have been needed to avoid anything. As the defendant was present for all hospital, pediatric, general practice, and specialists visits * * * the information contained in these reports cannot technically be considered privileged.

During the direct and cross examination of B.R., the issues of hallucinations and memory loss were raised and specific claims related to the issue made that the Defendant believes were inaccurate (Trial Transcript page 224, 300-305). As the State did not pass along any medical records related to these conditions, the defense had no ability to

examine the records or relay information to an expert to assist in creating a "confabulated memory defense". This was the strategy the Defendant believed was best. Defense counsel, without these records, had no ability to present such a defense.

{¶ 13} Russell asserted that B.R. "claimed to have faked hallucinations" at the time of the "allegations," but that he "recalls the hallucinations began many years earlier than any alleged incidents," and that he witnessed them. Russell argued that B.R.'s "many potential head injuries likely began in kindergarten" and that she sustained a concussion "a few months prior to the allegations" while playing basketball at camp. Russell argued that "[t]his concussion may have further contributed to confabulated memories."

{¶ 14} Russell asserted that one of his offenses involved a sex act with B.R. "done as a deal for B.R. to attend camp," but when it was revealed that a church had paid for the camp, questioning stopped. According to Russell, the questioning stopped because the information disclosed about payment for the camp contradicted the State's theory that "the 'deal' was to get permission due to a lack of available money." According to Russell, B.R. had been permitted to attend camps for many years, so there "would have been no way to compel" the sex act with that threat. He sought discovery of information about the summer camps that would show that B.R. was never denied opportunities to attend due to financial difficulties.

{¶ 15} Russell asserted that, two days before the "allegations" were made against him, he denied B.R. permission to stay out late with friends after a dance; she subsequently called her mother at work, who also denied permission. Russell asserted that this "could have led to the anger that compelled the allegations." He argued that the

State should obtain statements from individuals that he and/or B.R. claim were present when B.R. made the request.

{¶ 16} The State opposed Russell's motion for leave to file a motion for new trial. The State asserted that Russell's motion should be denied because he had failed to present "*any* documentary evidence, let alone documentary evidence that demonstrates he was unavoidably prevented from filing his motion on time."   Instead, the State characterizes Russell's evidence as "various items that he *thinks*, if looked into further, *might* exonerate him," but that did not "com[e] close to being new evidence that he could not, with reasonable diligence, have discovered and produced at trial."   According to the State, Russell presented no evidence that he was unavoidably prevented from filing his Crim.R. 33 motion in a timely manner; he simply wanted "a Court-sanctioned fishing expedition" that would allow him to take a closer look at old evidence.

{¶ 17} In reply to the State's motion in opposition, Russell noted "issues of plain error with the original trial" and requested that the court suppress evidence admitted at trial contrary to law.   Russell also asserted that the State's response was two days late and should be stricken.   Further, he argued that the State's response focused on *newly discovered* evidence, whereas his motion focused on "items accessible or in the possession of the State at the time of trial," not newly discovered evidence.   Russell argued that "any delay in the use of the evidence rest[ed] with the State's failure to disclose" and that the result of the trial would have been significantly different if this evidence had disclosed when requested.   Russell argued that the data obtained from the laptop and tower computer constituted the only evidence submitted in support of Counts 1 through 8, which led to 65% of his 75-year sentence; if this evidence had been

inadmissible due to the court's order, "there is a significant extant injustice."

{¶ 18} Russell also requested that the State acquire statements from B.R. and her mother regarding B.R.'s reliance on him to address "certain gynecological issues" she experienced.

{¶ 19} Russell also asserted that the "filename information presented from the Tower Computer and Laptop were taken from unallocated space and the browser cache," for which no date information was available, and that federal courts "have ruled data of this nature cannot be shown to construe knowing possession or control of the data."

{¶ 20} Russell argued that the concept of "child sexual abuse accommodation syndrome" had no place in the trial, as the expert had not conducted any physical or psychological examination of anyone involved in the case; he asserts that this evidence was offered "only * * * to shock the jury and sensationalize the issue." He argued that "the entire concepts of nudism and nude photography should be suppressed."

{¶ 21} Finally, Russell asserted that the law enforcement officer who interviewed him knew he was experiencing medical distress and promised assistance after the interview, but such assistance was never given. Russell asserted that he "protested the idea of rape" in the interview, and the interviewing officer stated "the conversation did not pertain to rape." Russell argued that the interview should be suppressed in its entirety.

{¶ 22} In its order overruling Russell's motion, the trial court determined:

> The Defendant has not provided the Court any documentary evidence showing by clear and convincing proof that he was unavoidably prevented from discovering new evidence which he could have used at trial.
>
> Instead, the Defendant presents arguments as to facts he was aware

of at the time of his trial and seeks an opportunity to search for new evidence that may be useful in his defense. None of the evidence which the Defendant now seeks to discover would be considered new evidence that could not have, with reasonable diligence, been discovered and produced at trial.

The Court finds that the Defendant has failed to produce any evidence that he was unavoidably prevented from filing his motion for a new trial pursuant to Cr.R. 33 in a timely manner. There is no evidence presented that would weigh in the Defendant's favor on his motion for a new trial.

{¶ 23} Russell appeals from the trial court's order, raising one assignment of error:

TRIAL COURT ABUSED ITS DISCRETION BY NOT APPLYING THE PARAMETERS OF "BRADY" TO THE REQUEST FOR DISCOVERY AND NEW TRIAL.

{¶ 24} Russell asserts that he "has attempted multiple times to secure evidence to show the inadmissibility of certain items and now comes to compel the discovery of other information which is favorable to his case. While his past methods had their flaws the intent was clear: produce the information which is exculpatory and impeaching in nature which was excluded from trial." According to Russell, "no limit exists on the time for which such evidence can be compelled into discovery."

{¶ 25} Russell asserts that B.R.'s medical records "would demonstrate a pattern of issues related to memory," and that if those records had in possession of the defense, he could have "demonstrated the possibility of * * * Confabulated Memories, an issue not

uncommon with individuals who have suffered repeated head injuries * * *." He also argues that the "blatant and profuse emotionalization of the jury by the State," along with "cajoled statements" by the police and the "withholding of evidence (intentional or not)" prevented a fair trial.

{¶ 26} Russell argues that, once he was arrested on October 9, 2009, certain evidence was outside of his control and in the custody of the Bureau of Criminal Investigation. He also argues that the complaining witness's medical records would have been obtained by the State, which "initiated the discussion of medical issues," and therefore it was the State's responsibility "to provide the means of cross-examination of the testimony."

{¶ 27} Russell argues that the trial court has ignored his past efforts to obtain the property still held by the State for an independent examination and to show its inadmissibility.

{¶ 28} Russell repeats the arguments made in his motion. He asserts that the State engaged in prosecutorial misconduct, that his pretrial statements to law enforcement were coerced, and that the "State's tactics of emotionalizing the jury, the police detective's desire to obtain a confession at all costs, and the withholding of information vital to an effective defense" unfairly compromised his right to a fair trial.

{¶ 29} As this Court has noted:

Generally, "[a] reviewing court will not disturb a trial court's decision granting or denying a Crim.R. 33 motion for new trial absent an abuse of discretion." (Citation omitted.) *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 82. However, the Supreme Court of Ohio

has indicated that a trial court's ruling on a motion for new trial claiming a *Brady* violation should be reviewed using "a due process analysis rather than an abuse of discretion test because the issue on review concern[s] [the defendant's] due process right to a fair trial, namely the suppression by the prosecution of evidence favorable to [the defendant]." *State v. Johnston*, 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988). *Accord State v. Oldaker,* 4th Dist. Meigs No. 16CA3, 2017-Ohio-1201, ¶ 19; *State v. Webb*, 12th Dist. Clermont No. CA2014-01-013, 2014-Ohio-2894, ¶ 16; *State v. Keith*, 192 Ohio App.3d 231, 2011-Ohio-407, 948 N.E.2d 976, ¶ 41 (3d Dist.); *State v. Hoffman*, 11th Dist. Lake No. 2001-L-022, 2002-Ohio-6576, ¶ 19.

Based on this precedent, we review de novo a trial court's ruling on a motion for new trial alleging a *Brady* violation, as the relevant inquiry is whether due process was violated by the prosecutor's failure to disclose evidence. *State v. Moore*, 3d Dist. Union No. 14-08-43, 2009-Ohio-2106, ¶ 19; *State v. Glover*, 2016-Ohio-2833, 64 N.E.3d 442, ¶ 35 (8th Dist.); *United States v. Bullock*, 130 Fed.Appx. 706, 722 (6th Cir.2005), citing *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir.1991) ("[t]he standard of review for the materiality of a purported *Brady* violation is *de novo* because it presents a mixed question of law and fact").

\* \* \*

Pursuant to the United States Supreme Court's decision in *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to

guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Therefore, in order to establish a due process violation under *Brady*, the defendant must demonstrate that: "(1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defendant; and (3) the evidence was material." *State v. Goney*, 2d Dist. Greene No. 2017-CA-43, 2018-Ohio-2115, ¶ 66; *Moore v. Illinois*, 408 U.S. 786, 794-795, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

Because exculpatory and impeachment evidence are favorable to the defendant, both types of evidence may be the subject of a *Brady* violation, so long as the evidence is material. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "Evidence is considered material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 16, quoting *Bagley* at 682. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Bagley* at 682.

"As a rule, undisclosed evidence is not material simply because it may have helped the defendant to prepare for trial." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 49. "The United States Supreme Court has rejected a standard of materiality that focuses 'on the impact of the undisclosed evidence on the defendant's ability to prepare for

trial, rather than the materiality of the evidence to the issue of guilt or innocence.' " *Id.*, quoting *United States v. Agurs*, 427 U.S. 97, 112-113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), fn. 20.

Furthermore, no *Brady* violation occurs when the undisclosed evidence is cumulative to evidence already known by the defense at the time of trial. *See State v. Cook*, 1st Dist. Hamilton No. C-950090, 1995 WL 763671, *3 (Dec. 29, 1995). There is also no *Brady* violation "if the evidence that was allegedly withheld is merely cumulative to evidence presented at trial." (Citations omitted.) *State v. Bonilla*, 2d Dist. Greene No. 2008 CA 68, 2009-Ohio-4784, ¶ 26.

*State v. Smith*, 2d Dist. Montgomery No. 27853, 2018-Ohio-4691, ¶ 24-29.

**{¶ 30}** This Court's decision affirming Russell's conviction reflects that there was overwhelming evidence of his guilt at trial. He confessed to law enforcement, he discussed the ongoing abuse with the victim in a call recorded by law enforcement, and while in jail, he placed calls to his mother and his wife in the course of which he confessed to the allegations that his daughter made against him. *Russell I,* 2d Dist. Clark No. 2011-CA-10, 2012-Ohio-4316, at ¶ 9-11.

**{¶ 31}** Further, Russell provided no evidence that the State suppressed material evidence favorable to him. We discussed the removal of items from Russell's home in *Russell III,* 2018-Ohio-518, 106 N.E.3d 248, as follows:

The record reflects that the box of condoms was admitted as State's Exhibit 16-A; the lubricant was admitted as State's Exhibit 16-B; the laptop computer was admitted as State's Exhibit 21-A; the Mercury Eros computer

tower was admitted as State's Exhibit 22; and the Kodak camera was admitted as State's Exhibit 30-A. The court's order of April 14, 2015 clearly applied to the property that was not contraband and that was still in the possession of the sheriff's department. Russell is not entitled to the return of the exhibits used to support his convictions. Further, it "is well settled that 'any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings.' * * *." *State v. Woullard*, 2d Dist. Montgomery No. 27216, 2017-Ohio-2614, ¶ 12. Finally, we note that to the extent that Russell may be suggesting that the computer tower and laptop computer were inadmissible, the record reflects that Russell did not object to their admission, and any such argument is waived.

*Id.* at ¶ 29.

{¶ 32} Regarding B.R.'s medical records, Russell lists multiple health care providers where the "information is available," but the records are not asserted to be in the State's possession. Further, any evidence in the records regarding past concussions suffered by B.R. was known to Russell before trial, as he asserted he attended all of her appointments but one. We cannot conclude that the information in the medical records was material simply because it may have helped Russell explore a "confabulated memory defense" for trial. The same is true of the church records, since Russell "requests information from" the churches themselves, and he does not assert the information is in the State's possession. He further failed to establish the materiality of the church records.

{¶ 33} Regarding Russell's request that the State obtain statements from certain individuals present with B.R. after a dance, Russell cannot establish that the State withheld exculpatory evidence based on statements that apparently were never obtained, nor can he establish their materiality. Russell was clearly aware of these witnesses at the time of trial, since he asserts that he observed them in his home. Russell provided no evidence that a reasonable probability exists that the result of Russell's trial would have been different if Russell had had access to the medical and church records or to the statements of these particular witnesses.

{¶ 34} Finally, we note that a couple of Russell's arguments which were initially, and therefore improperly, raised in his reply memorandum have already been addressed by this Court. In his direct appeal, we found that Russell's confession was not a product of coercion by law enforcement. *Russell I,* 2d Dist. Clark No. 2011-CA-10, 2012-Ohio-4316, at ¶ 17. In affirming the decision of the trial court on Russell's motion for declaratory judgment, we determined that Russell's "claims of prosecutorial misconduct are the proper subject of a direct appeal (and barred by res judicata), and that his motion for declaratory judgment is accordingly not within the spirit of R.C. 2721.03." *Russell II,* 2d Dist. Clark No. 2011-CA-10, 2012-Ohio-4316, at ¶ 17.

{¶ 35} Since Russell failed to establish that the State failed to disclose material evidence upon his request that was favorable to him, his assignment of error is overruled.

{¶ 36} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

Ian Richardson
Christopher M. Russell
Hon. Richard J. O'Neill